UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| NATIONWIDE GENERAL INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | 2:19-CV-00192-JRG-CRW |
| HIRAM CAUDILL, TRIPLE LEE CONTRACTING, LLC, and MELISSA STURGILL | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

This matter is before the Court pursuant to Defendants' motion to dismiss [Doc. 9] Plaintiff's complaint seeking a declaratory judgment. [Doc. 1]. Specifically, Plaintiff Nationwide General Insurance Company, ("Nationwide"), has sought from this Court "a determination that it has no duty to defend or indemnify Mr. Caudill under two liability insurance policies issued to Mr. Caudill by Nationwide." [Doc. 1, pg. 1]. Defendants Hiram Caudill, Triple Lee Contracting, LLC, and Melissa Sturgill, ("Defendants"), move this Court for a dismissal of the action "for two reasons: (1) this Court should exercise its discretion under 28 U.S.C. §§ 2201 and 2202 and decline adjudication, and (2) this Court should abstain from hearing the matter." [Doc. 10, pg. 2]. As the subsequent analysis will explain, Defendants' motion to dismiss is **GRANTED**.

### I.  BACKGROUND

#### A.  Events Giving Rise to this Action

This matter reaches the Court by way of Letcher County, Kentucky. [Doc. 10-1]. "[O]n or about April 10, 2018," Defendants Melissa Sturgill and Hiram Caudill came into contact with one

1

another, quite literally. *Id.* While Ms. Sturgill and Mr. Caudill were operating their respective vehicles "near Industrial Park Drive and the intersection of KY 000015 – Hazard Road, in Whitesburg," they collided. *Id.* As Nationwide explains in their complaint for declaratory judgment, "Ms. Sturgill alleges that at the time of the Motor [sic] vehicle accident . . . Mr. Caudill was operating a 1992 Peterbilt tractor-trailer owned by Triple Lee." [Doc. 1, pg. 4].

B.   **Procedural History**

Nationwide's complaint alludes to Ms. Sturgill's allegations because she sued Mr. Caudill and Triple Lee in a Kentucky state court for "damages for personal injuries she allegedly sustained in the Motor [sic] vehicle accident." *Id.* at 2. More specifically, Ms. Sturgill filed her complaint in Letcher County Circuit Court, in October of 2018. [Doc. 10, Exhibit A]. Her lawsuit has the makings of a classic common law negligence action, and all parties agree that the state-level matter is still in process. Unfortunately, few other details in this action involve an agreement among the parties.

Approximately one year later, and "in the same lawsuit, Defendant Sturgill amended to add a Petition for Declaratory Judgment." [Doc. 10, pg. 1]. "The purpose of that state court petition is to adjudicate whether there is coverage for the motor vehicle accident under . . . Caudill's personal auto insurance policies issued by Nationwide." *Id.* One month later, in October of 2019, "Nationwide then filed this declaratory judgment action in this Court." [Doc. 18, pg. 5]. And one month after that, Nationwide took further action in the Kentucky case, by filing "a motion in the state court action to strike the 'Petition for Declaratory Relief.'" *Id.* (citation omitted).

In other words, and all at once, the matter before this Court is essentially a reciprocal image of an action that predates this one and is currently playing out in a Kentucky state court. Whereas Nationwide stands as a plaintiff before this court, they do so as a defendant before the Letcher

2

County Circuit Court. The same dynamic is mostly true of Defendants, aside from the obvious distinction that Mr. Caudill and Triple Lee are being sued no matter how this Court dices the details.

In any case, one key difference can be drawn between these two actions. In the lawsuit commenced by Ms. Sturgill in Letcher County, the case involves a matter of contract dispute, but also more—namely a negligence claim. In this case, the only issue is a question of whether or not Nationwide has any duties at all with respect to the automobile accident giving rise to both of these lawsuits.

**C.  The Insurance Policies at Issue**

According to Nationwide, "[t]he tractor-trailer was insured under a separate liability policy issued by another insurance company and coverage under that policy is not at issue in this action." [Doc. 18, pg. 2 n.1]. One might wonder, then, how Nationwide ever ended up in this lawsuit in the first place. To that point, Nationwide previously issued two discrete insurance policies to Mr. Caudill, one of them in relation to two pickup trucks and the other providing coverage with regard to one additional truck and an SUV. [Doc. 1, pg. 4]. Nationwide's filings establish that each of these policies remained in effect during April of 2018, when Ms. Sturgill and Mr. Caudill converged. *Id.*

As Nationwide sees things, they "[have] no duty to defend or indemnify Mr. Caudill . . . because they are excluded from coverage under the terms of the two Personal Auto Policies." [Doc. 18, pg. 3]. Defendants doubt Nationwide's confidence, and argue that resolution of this dispute is already underway via the Letcher County Circuit Court action. [Doc. 10]. It is precisely for this reason that Defendants have filed their motion to dismiss the action in this Court. *Id.*

3

## II. ANALYSIS

### A. Declaratory Judgment Act and Judicial Discretion

#### 1. Legal Background

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Likewise, the law contemplates that parties to a lawsuit may not fully grasp the details of their contractual obligations. Accordingly, the Declaratory Judgment Act permits parties to "avoid accrual of avoidable damages" through "early adjudication," so that they do not have to "wait[] until [an] adversary should see fit to begin suit." *Blakely v. United States*, 276 F.3d 853, 872 (6th Cir. 2002) (quotation omitted); *see Ragen v. Hancor, Inc.*, 920 F. Supp. 2d 810, 843 (N.D. Ohio 2013) (observing that the Declaratory Judgment Act is "a means for clarifying contractual obligations"). When a court issues a declaratory judgment under the Declaratory Judgment Act, it "ha[s] the force and effect of a final judgment." 28 U.S.C. § 2201(a).

#### 2. Jurisdictional Requirements

"The Declaratory Judgment Act does not create an independent basis for federal subject matter jurisdiction." *Heydon v. MediaOne of Southeast Michigan, Inc.*, 327 F.3d 466, 470 (6th Cir. 2003) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 399 U.S. 667, 671-72 (1950); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). "Thus, before invoking the Act, the court must have jurisdiction already." *Id.* (citing *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). To establish federal subject matter jurisdiction, pursuant to the Declaratory Judgment Act but in recognition of the reality that this federal enactment does not, itself, provide as much, parties

4

must establish either diversity jurisdiction pursuant to 18 U.S.C. § 1332(a), or federal question jurisdiction under 28 U.S.C. § 1331. *Id.* at 469-70 (explaining that plaintiff failed to establish diversity among the parties and therefore could only prevail upon a showing that federal question jurisdiction was present).

Accordingly, and when presented with an action under the Declaratory Judgment Act, this Court's first task is to identify an independent jurisdictional basis on which the case may proceed. *See Bhd. Mut. Ins. Co. v. United Apostolic Lighthouse, Inc.*, 200 F. Supp. 2d 689, 691 (E.D. Ky. 2002) ("[T]he plaintiff must establish that the district court has either diversity jurisdiction or federal question jurisdiction before the Court will entertain a declaratory action."). Nationwide easily satisfies this initial requirement, as their complaint contains sufficient factual pleadings to establish diversity of citizenship among the involved parties. [Compl. at 2].

### 3. Judicial Discretion

The first step in this process may have been an easy one to clear, but the path forward for Plaintiff's Declaratory Judgment Act claim is far from preordained. To the contrary, and jurisdictional requirements notwithstanding, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *see also Am. Home Assurance Co v. Evans*, 791 F.2d 61, 64 (6th Cir. 1986) ("[The] Declaratory Judgment Act confers discretion on courts, not right on litigants[.]" (citing *Green v. Mansour*, 474 U.S. 64, 72 (1985))); *United Apostolic Lighthouse*, 200 F. Supp. 2d at 692 ("Once the Court has determined that subject matter jurisdiction exists, it must evaluate whether this case is appropriate for declaratory judgment pursuant to the Declaratory Judgment Act." (citing 28 U.S.C. § 2201; *Wilton*, 515 U.S. at 282–83)); *see also* 28 U.S.C. § 2201(a) (stating that

courts "*may* declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added)).

This Court's inquiry is guided by a series of factors laid out by the Sixth Circuit, which provide that a court should consider:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citations omitted). When parties fail to undertake a diligent overview of these factors and their application to the matter at hand, a court may view such an oversight as grounds for dismissal. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)); *see also* E.D. Tenn. L.R. 7.1(b) (stating that a party's brief "shall include . . . legal grounds which justify the ruling sought from the Court").

Nationwide's complaint makes no mention whatsoever of the *Grand Trunk* factors. [Doc. 1]. In response to Defendants' motion to dismiss, however, Nationwide offers a factor-by-factor argument in its favor. [Doc. 18]. For their part, Defendants also make an effort to explicate these factors, albeit in a far more abbreviated fashion. [Doc. 10].

As for the factors themselves, a colleague in Tennessee's Eastern District has described them as encapsulating three key concerns: "efficiency, fairness, and federalism." *U.S. Speciality Insur. Co. v. Payne*, 387 F.Supp.3d 853, 859 (E.D. Tenn. 2017). With these goals in mind and the

6

factors in hand, the Court has "substantial discretion in deciding whether to declare the rights of litigants," and it is "not permitted to exercise this discretion blindly." *Id.* (citing *Western World Inc. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2004)). In other words, "courts must use sound discretion that is 'hardened by experience into rule.'" *Id*. (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995)).

This Court's experience immediately illuminates all of the *Grand Trunk* factors in a light that favors Defendants' motion to dismiss. First, with respect to settling the controversy, this Court is mindful of the fact that Nationwide has filed essentially the same argument with the Kentucky state court. Though true that Nationwide has done so in response to Ms. Sturgill's own motion for a declaratory judgment in that matter, the fact remains that a court other than this one already has this same issue before them. In other words, the only sense in which this action would "settle the controversy" is by virtue of wresting that issue from the hands of a court in which this overall action already resides. *Grand Trunk*, 746 F.2d at 326. To be sure, Defendants have raised this exact point in their motion to dismiss. [Doc. 10, pg. 3] ("Here, the controversy . . . would not be settled . . . . [t]he same issue would be simultaneously proceeding in Kentucky, so no issues would be clarified by this case that couldn't otherwise be addressed in the Kentucky case.").

For argument's sake, it bears mention that the precise contours of this factor differ slightly, as between this action and the related case in Kentucky. Specifically, and as already mentioned, it is not Nationwide, but rather Ms. Sturgill, which has sought a declaratory judgment from the state court. But the question is exactly the same, and the menu of answers is as well. Simply put, the matter is a "yes or no" question of contract law, meaning that which party submitted the question is of no consequence when the impacted actors are the same. In this case, it matters not whether

7

Nationwide or Ms. Sturgill posed the question to the Kentucky court when the answer necessarily supplies an identical sort of resolution.

Second, the Court takes note of this conflict and its potential utility in terms of "whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. "[I]t is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Scottsdale Insur. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008). In this case, the Court concedes that it could play a role in settling this controversy, but the Court has already noted why doing so risks an overstep, across state lines and into the province of a Kentucky state court already entrusted with this matter.

There can be no doubt that answering the immediate question will advance such an end, but the issue is not so simple. Nationwide argues that this Court is best situated to provide that answer because the policies at issue were entered into with a Tennessee resident and under a contract whose provisions include a choice-of-law clause stipulating that Tennessee's contract laws shall apply. [Doc. 18, pg. 7] ("Tennessee law will be applied by this Court to determine the rights and obligations of Nationwide under the terms of the two Tennessee policies."). More on these choice-of-law details in a moment, but for the time being, the Court takes notice that this specific factor's concerns for useful utility are effectively underway already in Kentucky, where that court learned of these arguments before this one.

Third, the Court is called on to look under the hood of this lawsuit, in order to ascertain whether or not Nationwide has filed their complaint "merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata.'" *Grand Trunk*, 746 F.2d at 326. "The third factor is meant to preclude jurisdiction for declaratory plaintiffs who filed their suits mere

8

days or weeks before the coercive suits filed by natural plaintiffs and who seem to have done so for the purpose of acquiring a favorable forum." *Flowers*, 513 F.3d at 558.

Nationwide maintains that their case favors an exercise of this Court's discretion, as per this third factor, because "Nationwide 'filed this action only after it became apparent that its insureds had no colorable claim to coverage or a defense.'" [Doc. 18, pg. 5] (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)). In other words, and again according to Nationwide, they filed their complaint seeking a declaratory judgment from this Court "only after Ms. Sturgill attempted to file a 'Petition for Declaratory Relief' in the state court action." *Id.* (citation omitted). Nationwide readily admits, however, that upon doing so, it then also "filed a motion in the state court action to strike" Ms. Sturgill's petition, but apparently failed in this effort. *Id.* (explaining that Ms. Sturgill's petition was successfully docketed in the state court litigation). Stated another way, Nationwide is very clearly engaged in a litigation strategy predicated upon a tactic of simultaneously attacking the foundational issue of the instant matter, both before this Court and as it relates to the Kentucky case.

Defendants appear to recognize this point almost verbatim. [Doc. 10, pg. 3] ("The simultaneous adjudication of both declaratory judgment actions would essentially create a race for res judicata."). This Court agrees with Defendants to the extent that this conflict is framed in terms of the third factor established by *Grand Trunk*. 746 F.2d at 326. Nationwide effectively seeks to emphasize the chronological sequence of filings at the state court level, so as to convince this Court that Ms. Sturgill's effectively identical petition for declaratory judgment was not pending before the Kentucky court when they filed their instant motion. [Doc. 18, pg. 5].

Specifically, Nationwide avers that Ms. Caudill's petition was not pending, technically speaking, because of a delay between the time at which she submitted her filing and the point at

9

which it was officially docketed. *Id.* But this assertion works to the exact opposite end as what Nationwide appears to desire. Namely, this construction of the events only adds clarity to the fact that Nationwide raced to this Court, upon learning of Ms. Caudill's motion, in an attempt to obtain a favorable judgment before Ms. Caudill's arguments could be heard by the Kentucky court.

Fourth, it is hard to imagine a more paradigmatic "action [that] would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." 746 F.2d at 326. The instant issue, plus all related factual details pertaining to the auto accident itself, are currently pending before a state court. Still, and for the sake of fully exhausting the Sixth Circuit's instructions in conflicts such as this one, the Court takes note of several sub-factors specifically enumerated by the Sixth Circuit for application to this fourth factor. *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 814-815 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).

The first of three sub-factors identified in *Bituminous* asks "whether the underlying factual issues are important to an informed resolution of the case." *Id.* at 814. In other words, the issue is "whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. Nationwide contends, and this Court agrees, that "Ms. Sturgill's state court action concerns issues typical of a motor vehicle tort action." [Doc. 18, pg. 6]. True as that may be, this sub-factor is hardly dispositive of the overall issue at hand, nor is its resolution particularly compelling. In both the immediate action and as before the Kentucky court, the instant question is one of rudimentary contract law. Although this issue's resolution is independent of the factual dispute to which it ultimately relates, this dynamic, on its own, does not shift the Court's sense of caution with respect to intervening.

10

The second sub-factor identified in *Bituminous* inquires as to "whether the state trial court is in a better position to evaluate those factual issues than is the federal court." 373 F.3d at 814. Because "Tennessee law will be applied" to interpret the pertinent policy provisions at issue, Nationwide casts this conflict as one in which "[t]his Court is in a much better position than the state court in Kentucky" to resolve the conflict. [Doc. 18, pg. 7]. But as this Court already noted, Nationwide also maintains that it commenced the instant action "'only after it became apparent that its insureds had no colorable claim to coverage or a defense.'" [Doc. 18, pg. 5] (citing *Northland*, 327 F.3d at 454). In other words, it appears that Nationwide views this issue as one that can be easily resolved in its favor, but not one in which the Kentucky state court is competent to take on that task.

This Court agrees with Nationwide only to the extent of the former observation. The issue does appear to be one that is poised for a straightforward resolution. However, this Court also sees no reason to doubt the capabilities of the Kentucky state court, which obtained jurisdiction over this case first and surely possesses the wherewithal to resolve a contract dispute, be it based on Kentucky contract law or the laws of its neighbor state. Contrary to Nationwide's arguments, this sub-factor does not weigh strongly in its favor.

Third and finally, the *Bituminous* court considered "whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." 373 F.3d at 814-815. In other words, this focal point looks to "whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. Nationwide argues that this case would be an entirely different matter, "[w]ere this Court called upon to interpret a *Kentucky* insurance policy issued in *Kentucky* to a *Kentucky*

11

resident," but, because the opposite is true, this sub-factor should count in their favor. [Doc. 18, pg. 8]. "This Court is called upon to interpret *Tennessee* insurance policies issued in *Tennessee* to a *Tennessee* resident." *Id.*

The Court appreciates Plaintiff's italicized emphasis, but this distinction is glaringly clear to begin with. Obviously, this case would be a different matter under the circumstances postulated by Nationwide. And such would particularly be true if the matter at hand involved an issue of confounding complexity. But that is not the case. Instead, and just as Nationwide frames Ms. Sturgill's underlying lawsuit as a "typical" tort action, *this* case is a typical contract dispute, requiring, *inter alia*, that a court read the policy's terms and definitions and then apply them to the facts presented. This Court has great confidence in the Kentucky state court's ability to do so.

To bring things full circle and back to the fourth *Grand Trunk* factor, overall, the Court can glean a common theme across Nationwide's arguments on this front. Namely, Nationwide appears to either doubt the Kentucky court's competence to administer basic contract law in a dispute which Nationwide likewise seems to view as straightforward, or Nationwide has some other motive in seeking this Court's intervention. This Court declines to assume anything in either direction. Nonetheless, this Court can state confidently that the fourth *Grand Trunk* factor, which asks what conflicts might arise as between our federal and state courts in the event of a declaratory judgment, counsels against the Court's involvement. 746 F.2d at 326.

The fifth and final *Grand Trunk* factor, "whether there is an alternative remedy which is better or more effective," seems as clear to this Court as all others. *Id.* Nationwide seems to agree, but for different reasons. [Doc. 18, pg. 8] ("For the reasons set forth in the preceding paragraph, as between this Court and the Kentucky state court, proceeding in the Kentucky state court is *not* a better or more effective alternative remedy."). Alas, this Court views the issue from exactly the

12

opposite direction. For the reasons set forth in the preceding paragraphs, the Kentucky state court *is* a better and more effective alternative remedy to this conflict. *Grand Trunk*, 746 F.2d at 326.

For one, the events giving rise to this conflict occurred in Kentucky, the litigation giving cause for the instant action commenced there, and that litigation kicked off before Nationwide's filing ever made its way into Tennessee's Eastern District. While Nationwide clearly views this Court's involvement as the smarter and more convenient remedy, this Court wonders how that could be. The issue at hand is one involving basic contract law already before the Kentucky court, therefore meaning that resolution from this Court is only possible, quite literally, by complicating the process already in place for remedying the parties' disagreements.

Nationwide is correct to note that "[w]ith respect to weighing the factors, the Sixth Circuit holds that '[w]e have never assigned weights to the *Grand Trunk* factors when considered in the abstract.'" *Flowers*, 513 F.3d at 563. In this matter, the Court has done exactly what the Sixth Circuit counsels, that is, conducting an holistic analysis of the conflict presented to it, in light of the factors established under *Grand Trunk*. 746 F.2d at 326. Still, and even despite the fact that these factors cannot be applied in any empirical sense, the Court finds that each of them produces a logical outcome that cuts against the value of added complexity in a matter which Nationwide itself appears to view as elementary. Rather than pry this issue from the state court in which it was first raised, this Court will exercise the discretion assigned to it via the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, in order to ensure that this dispute remains intact and in place before a court that is fully capable of handling its resolution.

**B.     Defendants' Invocation of Abstention Doctrine**

"Pursuant to the Supreme Court's decision in *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976), federal courts may abstain from hearing cases where there are parallel

13

state court proceedings in the same or similar issues." [Doc. 10, pg. 3] (citing 424 U.S. 800 (1976)). According to Defendants, "[t]his court should abstain from adjudicating the coverage issue" at play in this matter because "[a] Kentucky court is already adjudicating the issue." *Id.* at 3-5. Rightly so, but Nationwide also points out that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813.

This Court has no choice but to accept the truth of both assertions because they are plainly self-evident from within the instant action and also the text of the Supreme Court's ruling in *Colorado River*. Most of all, the Court heeds a key message from our nation's highest Court with regard to abstention, namely that the doctrine supplies only "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813.

Defendants direct the Court's attention to eight factors laid out by the Sixth Circuit, in *Healthcare Company Ltd.*, for purposes of applying the *Colorado River* decision to future abstention issues. 784 F.App'x 390, 395 (6th Cir. 2019). And Defendants likewise argue that these factors counsel in favor of the Court invoking abstention doctrine in this case, thereby requiring that it step aside. [Doc. 10, pg. 5]. Nationwide, on the other hand, focuses on the bigger picture, particularly "the three general categories for abstention," arguing that none of them are relevant to this case. [Doc. 18, pg. 9].

On this point, the Court agrees with Nationwide, and ultimately finds that a detailed analysis under abstention doctrine is not merited in this case. As Nationwide notes, this is not a matter in which an issue of the federal constitution is concerned, nor is it one involving "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," nor is it an action in which "federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings." *Colorado River*, 424 U.S.

14

at 814-15. Much to the contrary, and unfortunately for the majority of Nationwide's arguments, this case is not at all one in which there exists "difficult questions of state law," in any sense or application of that language. *Id.* at 814.

Defendants are still correct in their application of factors from the Sixth Circuit insofar as they allege that "dismissal of this case would help avoid piecemeal litigation." [Doc. 10, pg. 5] (citing *Healthcare Company Ltd.*, 784 F.App'x 390 at 395). But Nationwide's contention that this doctrine is wholly inapposite to a case of this sort prevails because the conflict at issue simply is not an "exceptional circumstance." *Colorado River*, 424 U.S. at 813. Much to the contrary, contract disputes and automobile accidents occupy an enormous swath of dockets across our entire judicial system. It is for this same reason that the Court has no reason to doubt that the Kentucky court is well suited to handle this matter.

### III. CONCLUSION

Like nearly all other ventures in life, simplicity tends to lend itself to optimal outcomes. The conflict presented to this Court through Nationwide's effort to obtain a declaratory judgment and Defendants' responsive motion to dismiss is no different. While this Court has discretion to intervene, as per the provisions of the Declaratory Judgment Act, such an exercise of discretion is to be approached with caution, and brought into being only when doing so simplifies, rather than complicates, our courts' overall functioning. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942) (explaining that district courts are "under no compulsion to exercise" jurisdiction upon claims brought pursuant to the Declaratory Judgment Act).

Were this Court to further involve itself in the matter at hand, it struggles to imagine that doing so would eliminate tension or confusion. Instead, and to oblige Nationwide's request, the Court would necessarily need to reach into another state in order to decide for one of Kentucky's

courts an issue already pending before it, despite Nationwide's confident assertion of its simplicity. Where a claim is presented by a proponent who frames the issue as undemanding, the Court has good reason to doubt that the more complicated approach is actually the best option available. Accordingly, Defendants' motion to dismiss this matter is **GRANTED**. The Court will enter an order consistent with this opinion.

    ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE
